Nov. Term, 1850.

DOE
v.
CRAFT.

---

Doe on the Demise of VAIL *v.* CRAFT:

| 2 | 359 |
| 155 | 35 |

*Ejectment.* The right of the plaintiff's lessor to the land was based on sheriff's sale and deed. In 1846, a judgment was obtained on a note dated in 1845, before a justice. The judgment was in the usual form; nothing being expressed that property should be sold without valuation. Upon a transcript, an execution was obtained upon *scire facias,* but did not provide that collection should be made without relief from valuation. The sheriff sold the land on this judgment for what it would bring, and without appraisement. The plaintiff offered in evidence, on the trial of this ejectment suit, the note on which judgment was rendered, to show that it was executed after the 1st of *June,* 1843, and stipulated for a waiver of valuation and appraisement laws; which the Court refused. *Held,* that the sale was void, and the evidence rightly refused.

APPEAL from the *Dearborn* Circuit Court.

PERKINS, J.—Ejectment by *Doe* on the demise of *John B. Vail* against *William E. Craft,* for two lots in *Lawrenceburgh.* The usual consent rule was entered, the cause tried upon the general issue, and judgment rendered for the defendant.

The right of the plaintiff's lessor to the lots was based upon a sheriff's sale and a deed pursuant to it; and it was resisted by the defendant, on the ground that said sale and deed were void.

The facts in regard to the sale are as follow:

On the 7th of *March,* 1846, *George Tousey* recovered a judgment before a justice of the peace on a note dated *May* 7th, 1845, against *Alexander H. Dill:* The judgment was in the usual form and did not express that property

Monday,
December 2.

should be sold to satisfy it without valuation. Upon a transcript of that judgment, an award of execution was obtained in the Circuit Court, upon *scire facias*, at the *April* term, 1847. The judgment awarding execution was in the usual form and did not provide that it should be collected without relief from valuation laws. By virtue of an execution on this judgment in the Circuit Court, the sheriff of *Dearborn* county sold the lots in question without appraisement, and for what they would bring, to *Vail*, the plaintiff's lessor, and made a deed to him for the same on the 3d of *April*, 1847.

As by the general law of the state at the date of the contract on which the foregoing judgments were rendered, real estate could not be legally sold without appraisement, the sale in this case was void unless authorized by some special law. *Morss* and *Carpenter* v. *Doe*, in this Court, *May* term, 1850 (1). It is claimed that it was authorized by the provisions of " an act to require the bank to continue specie payment," approved *February* 13, 1843. The second section of that act provided that upon judgment on notes due to the bank, the whole consideration of which should have been advanced after the first day of *June*, 1843, property might be sold without appraisement. The third section enacted that " from and after the first day of *June* next, if any person or persons, for a consideration arising wholly after that time, shall agree in writing to pay any sum of money without any relief whatever from valuation or appraisement laws, judgment shall be rendered accordingly," and " property may be taken on execution and sold as therein provided." Section five is as follows:

" The second and third sections of this bill shall be construed to relate to and be applicable only to new loans and business transactions of the bank and branches and by and between individuals, contracted and created from and after the first day of *June*, 1843, and shall not be applied by the bank or branches, directly or indirectly, to any loans, discounts, or dealings heretofore had, nor shall any renewal of any note or arrangement on

any bill or bills of exchange, now in existence, or that may be created either by and between individuals, or with the bank, before the first day of *June* next, be made sub- ject to any other laws of this state for their collection, than those now in existence."

Neither the judgment before the justice, nor that upon *scire facias* in the Circuit Court, upon the claim for the collection of which the sheriff's sale in this case was made, authorized the sale as made, under the above cited statu- tory provisions, for neither of them expressed, in its terms, as provided in the third section, that it was to be collect- ed without relief from valuation laws. To obviate this difficulty, the plaintiff offered in evidence, on the trial of this ejectment suit, the note on which the judgment be- fore the justice was rendered, to show that it was exe- cuted after the first day of *June*, 1843, and stipulated for a waiver of "valuation and appraisement laws." The Court refused to receive the evidence, and we think right- ly. The act did not provide that on all notes, &c., dated after such a time, which should contain a waiver of valu- ation laws, property should be sold accordingly; but it provided that on such notes, containing such a stipulation, *the consideration of which should all have been advanced after such a time*, judgment should be rendered accordingly, and that on such judgments property should be sold without valuation; and whether, in any given case, the whole con- sideration of the note had been advanced after the first day of *June*, 1843, (the time fixed by the statute,) would be a question for examination on the trial of the suit on the note, and the judgment in the case, while unreversed, would be conclusive on the point. If the judgment should be that property to satisfy it be sold without appraise- ment, it should be expressed accordingly; and when so expressed, would be evidence that the consideration of the note involved had been advanced after the fixed date. If the judgment should not contain such a provision in regard to the sale, it would be conclusive that the con- sideration of the note involved had not been advanced after the fixed date. Had the Court, in this case, re-

ceived the note in evidence, the defendant would necessarily have been entitled to go into the question of its consideration, and thus the whole question litigated and closed in the first suit, must have been opened for re-litigation collaterally. Such should not be the case.

Again: It was the express provision of the statute that the sale should be according to the terms of the judgment. It enacted that where any person, for a consideration advanced after the first day of *June*, 1843, agreed for a waiver, &c., judgment should be rendered accordingly, and property might be sold " as therein provided" —that is, as provided in the judgment. This must be its meaning, because there might be many notes containing a waiver of appraisement laws, the consideration of which had not been advanced since the first day of *June*, 1843. On such notes the sale could not be " as therein provided" —that is, as provided in the notes. It would be the judgment that would determine the question, upon which one of the notes the sale might be " as therein provided." To that the officer would be compelled to look for his guidance. It is true that, in all cases where a sale could be had without appraisement, such sale would be as provided in the note, as well as according to the tenor of the judgment. In such cases the terms of the note and judgment would correspond. In other cases the terms of the note and judgment might differ—the former authorizing a sale without appraisement, the latter, not; and such must be presumed to have been the case before us.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Ryman* and *J. Sullivan*, for the appellant.

*D. S. Major, N. Brown*, and *E. Dumont*, for the appellee.

(1) See *ante*, p. 65.